Dear Honorable John Adams Hurson
You have asked for our opinion concerning recent State legislation that created a temporary prescription drug benefit plan for seniors in Maryland who are eligible for, but not served by, part of the federal Medicare program that offers prescription drug benefits. Specifically, you ask what effect the sunset provision in this State law would have if Congress were to create a more comprehensive federal prescription drug benefit program available only to individuals not covered by a state plan.
In our opinion, the General Assembly created the State plan as a temporary measure for the benefit of seniors affected by the decisions of certain managed care programs not to participate in the Medicare program. The General Assembly included the sunset provision to end the temporary State plan upon the creation of a federal plan that covered the same population. However, if Congress limits coverage of a new federal program to seniors not covered by a state program, we cannot say with certainty whether the sunset provision in the Maryland plan would allow Maryland seniors to qualify for the new federal program. Whether a future federal program would cover Maryland seniors would depend on the language of the federal law, as interpreted by the federal Health Care Financing Administration (HCFA), which administers Medicare, and ultimately the courts.
 I Prescription Drug Coverage Under Medicare
Medicare traditionally has been divided into two parts. Part A covers inpatient hospital care, skilled nursing facility care, home health agency care, and hospice care. Part B, which is optional and requires payment of a monthly premium, covers physician services, services provided by certain other practitioners, clinical laboratory tests, durable medical equipment, medical supplies, diagnostic tests, ambulance services, prescription drugs that cannot be self-administered, anti-cancer drugs, certain other services, and blood not covered under Part A. See Health Care Financing Administration, Establishment of the Medicare Plus Choice Program, 63 Fed. Reg. 34968 (June 26, 1998). Outside the context of inpatient hospital or hospice care and other than certain cancer drugs and those that cannot be self-administered, neither part covers prescription drugs.
In 1997, Congress created as part of Medicare an optional program that provides prescription drug benefits to some seniors. The Balanced Budget Act of 1997 added to the Medicare program a new Part C, known as Medicare Plus Choice. Pub.L. 105-33, Title IV, 111 Stat. 251 (August 5, 1997). Under Medicare Plus Choice, any individual entitled to Medicare Part A and enrolled under Part B, except individuals with end-stage renal disease, could elect to receive Medicare benefits through a Medicare Plus Choice plan instead of the traditional Medicare fee-for-service program. The law provides for three types of Medicare Plus Choice plans: (1) coordinated care plans, including HMO plans, provider-sponsored organization (PSO) plans, and preferred provider organization (PPO) plans; (2) medical savings account plans; and (3) private fee-for-service plans. See 63 Fed. Reg. 34968 (June 26, 1998). These plans may, but are not required to, provide coverage for prescription drugs.
The providers of Medicare Plus Choice are reimbursed on a capitated basis; the adequacy of the capitation rates has been the subject of significant debate. Many providers of Medicare Plus Choice plans have withdrawn from the market altogether or have limited the areas in which they offer their plans. As a result, many seniors no longer have access to Medicare Plus Choice providers, or have access to Medicare Plus Choice providers but not to a plan that covers prescription drug costs.
 II Maryland Short-Term Prescription Drug Subsidy Plan
During the 2000 Session, the General Assembly created a temporary prescription drug plan as a stopgap measure to address the lack of prescription coverage in certain areas of the State after providers left the Medicare Plus Choice system. Chapter 565, Laws of Maryland 2000. The benefit program is codified at Annotated Code of Maryland, Health-General Article ("HG"), 15-601 et seq.
The 2000 legislation recited certain findings as the premise for the temporary State plan. The General Assembly found that, because the cost of providing Medicare Plus Choice benefits that included prescription drug coverage exceeded the income from premiums, managed care organizations had left the Medicare Plus Choice program in a number of jurisdictions in Maryland; as a result, residents of 14 Maryland counties lacked access to such a managed care plan. Chapter 565, Preamble, Laws of Maryland 2000. Moreover, the Legislature found that 15 percent of the seniors in Maryland lacked access to a Medicare Plus Choice managed care plan that provided prescription drug benefits, placing Maryland among the states with the highest percentage of underserved seniors. Id.
The temporary State plan applies in 17 counties identified as medically underserved, and in areas of other counties no longer served by a Medicare Plus Choice provider. HG § 15-601(f), (g). The plan is to serve up to 15,000 individuals and provide prescription drug benefits in return for a $40 per month premium, a $50 per year deductible, and co-pay limits ranging from $10 to $35. HG § 15-603(a). The total annual benefit is limited to $1,000 per individual. Id. The plan is to be administered by the last carrier to provide Medicare Plus Choice coverage in a medically underserved county or portion of a county. See Annotated Code of Maryland, Insurance Article ("IN"), § 15-606(c)(2)(iii).[1]
Expenses of the program in excess of the premiums paid by subscribers are to be financed by the Short-Term Prescription Drug Subsidy Plan Fund. That fund consists of the proceeds of a charge imposed on health insurance carriers who participate in the substantial, available, and affordable coverage program[2] under the auspices of the Maryland Health Services Cost Review Commission. HG § 15-604.
The nature of the program as a stopgap measure is reflected by the short title of the law: "Senior Assistance — Short-Term Prescription Drug Subsidy Plan." Moreover, the Preamble states that it is the "intent of the General Assembly to find a temporary means of providing prescription drug benefits in those counties or portions of counties that are medically underserved and have no managed care prescription drug benefits available." (emphasis added). In the same vein, Section 5 of the law provides that the plan will end on "the availability of comparable prescription pharmacy benefits provided by Medicare under Title XVIII of the Social Security Act," or on June 30, 2002, if no federal program is enacted.[3] See also Floor Report for Senate Bill 855 (new coverage under State plan "would continue until the federal government provides for a renewed program or two years, whichever is earlier").
In our opinion, the intent of the General Assembly could not be clearer — the plan is a temporary measure to benefit underserved seniors until the federal Medicare program is revised to reach those seniors. The creation of a comparable federal plan as part of Medicare, whether or not the federal plan is limited to states without a state plan, should trigger the sunset provision of Section 5. However, if it were clear that the federal plan did not apply in Maryland and thus "comparable prescription benefits" were not "available" to Maryland seniors, as required by Section 5, the State plan would remain in effect until June 30, 2002.
To the extent that eligibility for new Medicare prescription drug benefits is made contingent on the absence of a state plan, in our opinion, Maryland should be considered a state without a plan by virtue of the sunset provision in Section 5 — either as of the passage of the federal law or as of June 30, 2002. The language of Chapter 565, as well as its legislative history, demonstrates that the General Assembly was not enacting a comprehensive prescription drug benefit program, but was attempting to plug a gap that had arisen in federal coverage under Medicare.
Despite the General Assembly's clear intent, the terms and statutory language creating a new federal program could frustrate that intent. While it is expected that Congress will take some action to address the problems caused by the withdrawal of providers from the Medicare Plus Choice program, no action was taken by the 106th Congress, and the 107th Congress has only recently convened. As of this date, at least four bills concerning the Medicare Plus Choice program or prescription drug benefits have been introduced in the Congress,[4] and more bills may be introduced. Of course, it cannot be predicted with certainty whether any of these bills will pass and, if so, whether they will create a prescription drug benefit program that applies only in states with no existing plan, or precisely how such a bill would be worded.[5]
 III Conclusion
In our opinion, the State short-term prescription drug subsidy plan is a temporary measure, designed to benefit Maryland seniors adversely affected by gaps in Medicare coverage that have arisen as a result of the decisions of certain managed care programs not to participate in the Medicare Plus Choice program. The General Assembly included a sunset provision to end the temporary State plan on the creation of a federal plan covering the same population. However, if Congress limits coverage of a new federal program to seniors not covered by a state program, we cannot say with absolute certainty whether the sunset provision in the Maryland plan would allow Maryland seniors to qualify for the new federal program. Whether a future federal program would cover Maryland seniors would depend on the precise terms of the federal law, as interpreted by HCFA and ultimately the courts.
J. Joseph Curran,Jr. Attorney General
Kathryn M. RoweAssistant Attorney General
Robert N. McDonaldChief Counsel Opinions Advice
[1] The Fiscal Note reflects that this carrier will be CareFirst Blue Cross Blue Shield of Maryland. Fiscal Note to Senate Bill 855 (revised April 10, 2000).
[2] COMAR 10.37.10.26A. The substantial, available, and affordable coverage ("SAAC") program is designed to encourage health insurers to insure those individuals with preexisting medical conditions who might otherwise find it difficult to obtain affordable health insurance. Insurers who participate in the program offer to such individuals a package of benefits designated by the Maryland Health Care Commission. IN § 15-606. As a result, the SAAC program increases the percentage of individuals with health insurance and reduces hospitals' costs for uncompensated care. In return for participating in the SAAC program, insurance carriers currently receive a 4% differential on regulated hospital charges from the Health Services Cost Review Commission. See Fiscal Note to Senate Bill 855 (revised April 10, 2000).
[3] Section 5 reads, in pertinent part:
. . . On the earlier of the end of June 30, 2002, or the availability of comparable prescription pharmacy benefits provided by Medicare under Title XVIII of the Social Security Act, as amended, with no further action required by the General Assembly, this Act shall be abrogated and of no further force and effect. . . .
Chapter 565, § 5, Laws of Maryland 2000. Read literally, this provision would apparently not sunset the program if the federal government provides for prescription benefits for seniors in a new program that is not part of Title XVIII of the Social Security Act.
[4] See H.R. 145, H.R. 148, S.10, S.125. None of these bills would establish a federal prescription drug benefit program contingent on the absence of a state program.
[5] For example, the federal program could be drafted so as to apply only in states that did not have a plan as of a specified date. Depending on that date, such federal legislation might be read to exclude Maryland seniors if the State short-term prescription drug plan were in effect on that date. Even in the absence of language that clearly excluded Maryland seniors, there is some risk that HCFA could interpret ambiguous language to exclude Maryland seniors.
 *Page 21